| | |
|---|---|
| District Court, El Paso County, Colorado<br>270 S. Tejon Street<br>Colorado Springs, Colorado 80903<br>719-452-5000 | DATE FILED: February 1, 2024 11:05 AM<br>FILING ID: DB302C382D5CE<br>CASE NUMBER: 2024CV30197 |
| Wesley McConnell, Plaintiff,<br><br>V.<br><br>Ashley Schultz, Defendant | **COURT USE ONLY** |
| Wes McConnell, #45545<br>P.O. Box 1067<br>Palmer Lake, CO 80133<br>wes.e.mcconnell@gmail.com<br>719-419-4766 | Case Number:<br><br>Division:        Courtroom: |
| **VERIFIED COMPLAINT** ||

Plaintiff, Wesley McConnell, appearing pro se, complains against Defendant Ashley Schultz as follows:

## JURISDICTION AND VENUE

1. Plaintiff Wesley McConnell ("Plaintiff") is an individual who resides at 2000 Barrett Road in the City of Colorado Springs, County of El Paso, State of Colorado.

2. Defendant Ashley Schultz ("Defendant") is an individual who resides at 20320 Peyton Highway in the City of Peyton, County of El Paso, State of Colorado.

3. All persons having any interest in the matter are parties to this action.

4. The El Paso County District Court possesses jurisdiction over the subject matter of this case pursuant to Article VI, Section 9 of the Constitution of Colorado.

5. Venue is proper in this forum pursuant to C.R.C.P. 98(c) as the Plaintiff and Defendant reside in El Paso County and the claims arose in El Paso County.

## GENERAL ALLEGATIONS

6. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein.

7. On or about June 6, 2019, Plaintiff received a telephone call from then-Captain Casey Randle ("Randle"), an attorney working at the 50th Space Wing Office of the Staff Judge Advocate located at Schriever Space Force Base in Colorado Springs, Colorado[1].

8. Randle notified Plaintiff that she had been interviewed by the 50th Security Forces Squadron Office of Investigations ("50 SFS/SFOI") and asked questions about Plaintiff.

9. Specifically, Randle relayed that the investigator asked her if she had any negative experiences with Plaintiff; particularly whether Plaintiff had attempted to touch her inappropriately in a sexual manner or said anything sexually inappropriate to her.

10. Randle told investigators that Plaintiff had never done anything to make her feel uncomfortable or attempted to touch her in any way.

11. Randle asked investigators whether Plaintiff knew he was under investigation to which they replied that he did, which statement was intentionally false, as Plaintiff had no idea he was under investigation for anything.

12. Plaintiff, who was preparing for a fully litigated criminal trial at Fort Carson, Colorado, contacted then-Lieutenant Colonel Jason Keen (hereinafter, "Keen"), the Staff Judge Advocate of the 341st Missile Wing at Malmstrom Air Force Base in Great Falls, Montana.

13. Plaintiff is a reservist in the United States Air Force Judge Advocate General's Corps ("JAG Corps") who, at the time, was assigned to the 341st Missile Wing and Keen was, at the time, his active-duty supervisor.

14. Plaintiff asked Keen if he knew whether Plaintiff was under investigation for any type of sexual misconduct.

15. Plaintiff specifically asked about sexual misconduct based on the apparent meaning behind the investigator's questions to Randle.

16. Keen stated that, as far as he knew, Plaintiff was not under investigation for anything.

17. Plaintiff told Keen during the call that, if he was under investigation for sexual assault, that regardless of the accusation or the identity of the accuser, if tried by court-martial on any allegation(s), Plaintiff would testify as he had never sexually assaulted anyone.

18. Plaintiff also contacted then-Lieutenant Colonel Blake Williams ("Williams") (a colleague for whom Plaintiff worked when Williams was the Staff Judge Advocate at McChord Air Force Base in Washington) to inquire as to whether he knew whether Plaintiff was under investigation.

19. Williams denied knowing anything but posited that, since Plaintiff was about to be reassigned as the Staff Judge Advocate at the 310th Space Wing (a reserve unit at Schriever

---

[1] At the time described, Schriever Space Force base was called Schriever Air Force Base. With the establishment of the U.S. Space Force within the Department of the Air Force, Schriever was renamed Schriever Space Force Base and will be designated as such in this Complaint.

Space Force Base), perhaps the questions from 50 SFS/SFOI to Randle were part of a background check for the leadership position.

20. Plaintiff also called the Air Force Office of Special Investigations ("AFOSI") Detachment at Malmstrom Air Force Base to see if it had any information regarding an investigation into Plaintiff.

21. The AFOSI Detachment special agent (name currently unknown) denied that Plaintiff was under investigation by his office.

22. The next day, prior to the start of the trial at Fort Carson, Plaintiff contacted the 50 SFS/SFOI and spoke with the investigator who had questioned Randle.

23. The investigator (name currently unknown) relayed that Plaintiff was under investigation for an undefined sexual assault and would not relay either the specifics of the accusation or the name of the accuser.

24. Approximately 2-3 weeks later, Keen called Plaintiff and notified him that he was, indeed, under investigation for sexual assault.

25. At the time, Plaintiff was notified that his anticipated reassignment to the 310th Space Wing as the Staff Judge Advocate had been revoked and that he would be reassigned.

26. The Staff Judge Advocate of a legal office in the United States Air Force is the senior lawyer and leader for that particular office.

27. Loss of the position not only resulted in lost income to Plaintiff, it also resulted in loss of the leadership position as Staff Judge Advocate for the 310th Space Wing and greatly impacted Plaintiff's promotion opportunity.

28. Upon information and belief, at the time of the accusation, Plaintiff was rated in the top five percent of reserve field grade officers in the U.S. Air Force JAG Corps.

29. In August of 2019, Williams spoke with then-Lieutenant Colonel Andrea Hall ("Hall"), the Staff Judge Advocate of the 50th Space Wing at Schriever Space Force Base.

30. After discussing their official business, Williams asked Hall what was going on with the investigation regarding the Plaintiff.

31. Hall, while not stating who the accuser was or the nature of the allegation, responded, "Even if the statute of limitations were not an issue, we would not do anything because it is a bullshit allegation," or words to that effect.

32. This indicated that the allegation arose sometime more than five years in the past and did not involve an allegation of rape as the statute of limitation for sexual misconduct under the Uniform Code of Military Justice ("UCMJ") (other than rape, for which there is not statute of limitation) is five years.

33. Also in August 2019, Plaintiff suffered the indignity of being processed by law enforcement to include being fingerprinted, having "mug shots" taken and being indexed in the Defense Central Index of Investigations.

34. During this process, Plaintiff saw part of a document with his name on it and the possible allegation which was Abusive Sexual Contact[2] under Article 120a(h) of the UCMJ as it was from 2012-2019.

35. AFOSI sought to interview Plaintiff but Plaintiff exercised his rights under Article 31, UCMJ.[3]

36. Because of this, Plaintiff understood that the allegation was not of a penetrative offense.

37. After seeing this, Plaintiff spontaneously stated to the AFOSI special agent that he had been sexually assaulted several times while serving in the United States Navy and the United States Air Force.

38. At no time, despite being a mandatory reporter, did the agent report or investigate or seek to clarify Plaintiff's claims of sexual assault during his time in the U.S. Air Force.

39. Upon information and belief, and based on the extensive experience of Plaintiff with the military justice system, this is because the United States Air Force routinely downplays sexual assaults against males, particularly if the offender is female.

40. In September of 2019, Plaintiff was serving his two-week annual tour and inactive duty training at Malmstrom Air Force Base in Great Falls, Montana.

41. Plaintiff was notified by Keen at that time that the investigation was completed, that the allegation was unsubstantiated and that no action on the sexual assault allegation would be taken.

42. Plaintiff requested that he be told of what he was accused and by whom.

43. Keen refused to disclose the information.

44. Upon information and belief, the U.S. Air Force has a policy of denying falsely accused members information regarding either their accusers or the accusations in an effort to shield the accusers from being held responsible for their false accusations while at the same time taking adverse action against the accused person.

45. While at Malmstrom Air Force Base, Plaintiff became alarmed at the toll the false accusation and the investigation was taking on his mental health to the point he became concerned about self-harm.

---

[2] Abusive Sexual Contact under Article 120, UCMJ, "[a]ny person who engages in or causes sexual contact with or by another person…is guilty of abusive sexual contact…" Further, "sexual contact" is defined as, "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person, or intentionally causing another person to touch either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate or degrade any person or to arouse or gratify the sexual desire of any person.

[3] Article 31, UCMJ, like *Miranda* in civilian jurisdictions, confers upon military members the right to remain silent when they are accused of a crime.

46. Plaintiff met with a mental health professional at the 341st Medical Group as well as a physician's assistant.

47. Because of her concern for Plaintiff's safety, the physician's assistant contacted Keen by telephone to discuss that concern.

48. Unbeknownst to Keen, Plaintiff could hear his side of the conversation clearly.

49. Keen told the physician's assistant that he was aware of the toll the matter was taking on Plaintiff and that he notified Plaintiff's senior reserve manager, Colonel Elizabeth Lickliter ("Lickliter"), of his concerns for Plaintiff by telephone.

50. Plaintiff scheduled a meeting for the next day with Lickliter in Cheyenne, Wyoming during his return to Colorado.

51. During his conversation with her, Lickliter told Plaintiff that she had never been told by Keen about the situation and his concerns for Plaintiff's well-being.

52. Upon information and belief, Keen lied to Plaintiff's medical provider when he told her that he had relayed concerns to Lickliter.

53. On September 15, 2019, Plaintiff sent a Preservation of Evidence Letter to several identified members of JAG Corps leadership, stating that they should preserve all communications and documents related to the investigation into the claims by Defendant (whose identity was then unknown to Plaintiff) for future litigation.

54. Prior to the completion of the investigation and because the Air Force refused to disclose the nature of the allegation and the identity of the accuser, Plaintiff, who was in private practice when not serving in the Air Force, was forced to notify his clients of the allegation so that they could each make the informed decision of whether to continue being represented by Plaintiff because Plaintiff did not know if he would be recalled to active-duty and prosecuted for a crime he did not commit but for which he could be confined.

55. Furthermore, because of the accusation, Plaintiff could not responsibly take on new clients because of the uncertainty surrounding any action that might be taken by the Air Force thus greatly impacting Plaintiff's ability to make an income and support his children.

56. Plaintiff also had to refrain from renewing both his office lease and apartment lease for the same reasons.

57. Based on Plaintiff's experience with the JAG Corps and Air Force in general, while no military protection order had been issued, Plaintiff was constrained from contacting Defendant to confirm whether she was the accuser or not since the Air Force regularly punishes members for such action.

58. In February or March of 2020, Plaintiff heard a rumor through an unknown individual in the Air Force JAG Corps that Defendant was the accuser and that the allegation was one of sexual misconduct but without specifics as to the acts alleged.

59. Plaintiff also requested, through the Freedom of Information Act, a copy of the investigation which he received in a heavily redacted form wherein the name of the accuser and the accusation were redacted as well as the names of all witnesses.

60. Up to this point, Plaintiff did not receive any notification from the Air Force, his leadership or investigators that Defendant was the accuser nor what the actual accusation was.

61. In January 2023, Plaintiff was placed on extended active-duty orders at Space Base Delta 1 Office of the Staff Judge Advocate, with responsibilities at both Schriever Space Force Base and Peterson Space Force Base.

62. At the time, Lieutenant Colonel Nichole Torres ("Torres") was the Staff Judge Advocate.

63. Part of the responsibilities of the Plaintiff was and is to review allegations of sexual assault in the Air Force.

64. Because of this, Plaintiff is compelled to notify the leadership of each Air Fore legal office for which he works of the false allegation against him so that they may make an informed decision as to whether to have him review those cases based on any concerns they may have of actual or implied bias on the part of the Plaintiff.

65. In April of 2023, during a staff meeting, Plaintiff, noticed that Defendant's (also an Air Force reservist) name was listed on the office calendar as being present in the office for a period of military service from May 15-26, 2023.

66. Plaintiff, who had never been notified that Defendant would be working in the same office, approached Torres and let her know that Defendant was the rumored accuser of Plaintiff and that, if this was true, Plaintiff would not work in the same office as Defendant due to the danger that she poses to him.

67. At his request, Plaintiff was authorized to telework for the days that Defendant works in the legal office.

68. When Defendant's military service was completed, Plaintiff returned to the office from telework status and spoke with Torres.

69. For the first time in almost four years, Plaintiff had official confirmation from the Air Force that Defendant was his accuser (though the nature of the allegation at this point is still not fully known) as Torres told him that she had spoken with Defendant and Defendant again defamed Plaintiff when she confirmed that Plaintiff was the target of her accusation and that the allegation was one of sexual misconduct.

70. During her conversation with Torres, Defendant further defamed Plaintiff when she told Torres that Plaintiff had received a Letter of Reprimand[4] for his conduct toward her.

---

[4] A Letter of Reprimand is an administrative action intended to address misconduct by members of the Air Force. If an officer, such as Plaintiff, receives an LOR it is commonly known to be a "career ender" and is filed in the Officer Selection Record of the member.

71. Upon information and belief, the purpose of this defamatory statement was to further degrade the reputation of Plaintiff in the eyes of the members of the JAG Corps and to affect the promotion potential of Plaintiff.

72. During his conversation with Torres on that day, Torres informed Plaintiff that Hall had told her the same thing regarding the allegation, that is that "It is bullshit."

73. Plaintiff has never received any kind of administrative, non-judicial or judicial action for the conduct alleged by Defendant.

74. At the time the allegation arose, it was official Air Force policy by regulation that, if a commander had any evidence that a member had committed a sexual assault (to include the allegation made by Defendant), that commander was required to initiate administrative separation of the accused member.

75. Because Plaintiff's commander had no evidence to support the allegation, no administrative separation was initiated against Plaintiff.

76. Plaintiff has borne severe financial, physical, mental and emotional damages as well as damage to his reputation over the course of the almost five years since he learned of the allegation and continues to do so.

77. Plaintiff has had to seek counseling and has been identified as possibly suffering from post-traumatic stress disorder due to the false allegation by the Defendant.

78. The psychological trauma suffered by Plaintiff has manifested itself physically through regular heart palpitations, shortness of breath and anxiety.

79. Plaintiff has been sexually assaulted no less than 12 times while serving in both the United States Navy and the United States Air Force.

80. Plaintiff's reports of these assaults were ignored by Keen, Colonel (retired) Taralyn Olayvar, Colonel Anthony Bell, the Sexual Assault Response Coordinator at Malmstrom Air Force Base and the AFOSI Detachment at Schriever Space Force Base.

81. From the date he learned of the allegation against him, no member of Plaintiff's leadership has done anything to support Plaintiff in the face of the false allegation nor have they checked on his mental, emotional or physical well-being as a result of the false allegation.

82. Upon information and belief, Defendant, while on active-duty, was assigned as a paralegal to the 50th Space Wing Office of the Staff Judge Advocate from 2008-2010.

83. Other than possibly conversations or written communications (work e-mail) in a professional setting, Plaintiff has never had any communication with Defendant.

84. Plaintiff has never touched Defendant in any manner, sexual or otherwise.

85. Because the copy of the investigation received by Plaintiff was so heavily redacted it is unknown at this time, the full extent of Defendant's defamatory statements and to whom they were made.

86. When an individual in the Air Force is investigated for sexual assault, there are essentially four options as to what action can be taken: (1) No action; (2) Administrative action in the form of a Letter of Counseling/Admonishment/ Reprimand ("LOCAR"); (3) Administrative separation; (4) Non-judicial punishment under Article 15, UCMJ ("NJP"); or (5) Trial by Court-Martial.

87. The burden of proof for administrative action to include a LOCAR and administrative separation is a preponderance of the evidence.

88. While there is no burden of proof for NJP, legal offices normally evaluate the evidence under the beyond a reasonable doubt standard since a military member has the right to demand trial by court-martial when offered NJP.

89. The burden of proof for a finding of "guilty" at a military court-martial is, like in other state and federal criminal cases, beyond a reasonable doubt.

90. In the Air Force, if the evidence supports a finding of probable cause, that is, that there is a reasonable basis for believing that a crime has been committed and that the accused committed it, especially in sexual assault cases, the standard practice is to initiate trial by court-martial.

91. Plaintiff was never given administrative paperwork, had never had administrative separation initiated, was never offered NJP, and was never charged with a crime.

92. In addition, standard practice in the Air Force where one member has accused another of a sexual crime is to issue a military protective order ("MPO") (which is similar to a civil protection order) to the accused (in this case, the Plaintiff) to have no contact with the accuser (in this case, the Defendant).

93. Plaintiff was never issued a MPO, presumably for one or both of two reasons: (1) because the evidence did not support that a crime occurred; and/or (2) because to do so would have identified the Defendant to Plaintiff which would have subverted the Air Force's desire to shield Defendant from a Complaint such as this.

94. Defendant was assigned to the 50th Space Wing Office of the Staff Judge Advocate from April 2008 to December 2011.

95. Plaintiff was assigned as a senior prosecutor at Peterson Space Force Base from August 2008 to March 2011.

96. While the Plaintiff does not specifically recall, it is possible that Plaintiff and Defendant met and worked together for short periods at Schriever Space Force Base.

97. Any communications between Plaintiff and Defendant would have been strictly about professional matters.

98. As evidence of the Air Force policy of shielding accusers from responsibility for their false claims, in the fall of 2019, Plaintiff spoke with Col(retired) Taralynn Olayvar ("Olayvar") a previous supervisor of the Plaintiff.

99. Plaintiff trusted Olayvar so notified her of the investigation.

100. During the conversation, Plaintiff told Olayvar that, once he discovered the accuser and the specifics of the allegation, he intended to file a suit for defamation.

101. Olayvar responded that Plaintiff should not do so because to do so would discourage Air Force members from reporting sexual assault.

## CLAIMS FOR RELIEF

### (First Claim for Relief - Defamation)

102. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein;

103. Defendant made a false statement alleging sexual misconduct by Plaintiff to numerous as yet unnamed individuals;

104. Defendant's statement was in both written and oral form and ultimately published to the Air Force Office of Special Investigations as well as other currently unknown individuals;

105. Defendant made the statement intentionally to harm the reputation of plaintiff, promotion potential of Plaintiff and the physical, mental and emotional well-being of Plaintiff; and

106. Plaintiff has been damaged in an amount to be determined at trial.

### (Second Claim for Relief – Defamation)

107. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein;

108. Defendant made a false statement alleging that Plaintiff received a Letter of Reprimand;

109. Defendant's statement was in oral form and published to Lt Col Nichole Torres;

110. Defendant made the statement intentionally to harm the reputation of plaintiff, promotion potential of Plaintiff and the physical, mental and emotional well-being of Plaintiff; and

111. The Plaintiff has been damaged in an amount to be determined at trial.

### (Third Claim for Relief – Intentional Infliction of Emotional Distress)

112. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein;

113. Defendant engaged in extreme and outrageous conduct, to wit: falsely accusing Plaintiff of sexual misconduct in Spring 2019 and Spring 2023 as well as falsely claiming that Plaintiff received a Letter of Reprimand;

114. Defendant engaged in the conduct recklessly and with the intent to cause the Plaintiff severe emotional distress;

115. Plaintiff suffered severe emotional distress as a result of Defendant's conduct; and

116. Plaintiff was damaged in an amount to be determined at trial.

### (Fourth Claim for Relief – Negligent Infliction of Emotional Distress – Pled in the Alternative to Third Claim for Relief)

117. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein;

118. Defendant engaged in extreme and outrageous conduct, to wit: falsely accusing Plaintiff of sexual misconduct in Spring 2019 and Spring 2023 as well as falsely claiming that Plaintiff received a Letter of Reprimand;

119. Defendant engaged in the conduct negligently to cause the Plaintiff severe emotional distress;

120. Plaintiff suffered severe emotional distress as a result of Defendant's conduct; and

121. Plaintiff was damaged in an amount to be determined at trial.

### (Fifth Claim for Relief – Injunctive Relief-Cease and Desist Order)

122. Plaintiff incorporates all of the foregoing allegations as though set forth fully herein;

123. Plaintiff requests that the court immediately issue a cease and desist order to Defendant, ordering her to cease and desist from defaming Plaintiff during the pendency of this Complaint.

WHEREFORE, Plaintiff Wes McConnell demands judgment in his favor on the claims set forth herein to include compensatory and punitive damages in an amount to be determined at trial as well as reasonable attorney fees and costs.

Date: January 24, 2024

Wes McConnell, #45545
Attorney for Plaintiff
P.O. Box 1067
Palmer Lake, Co 80133
719-419-4766

Pursuant to C.R.C.P. 121, Section 1-26(7) a copy of this document with original and/or scanned signatures is maintained at the offices of McConnell Law, P.C. and will be made available for inspection by other parties or the Court upon request.